IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ASHLEE MINER,

                Plaintiff,

   v.                                                  OPINION and ORDER

FRANK J. BISIGNANO,[1]                                24-cv-51-jdp
Commissioner of Social Security,

                Defendant.

---

     Plaintiff Ashlee Miner seeks judicial review of a final decision of defendant Frank J. Bisignano, Commissioner of the Social Security Administration, finding that Miner was not disabled within the meaning of the Social Security Act. Miner contends that administrative law judge Guilia Parker erred by (1) failing to include a foot elevation restriction in the RFC; and (2) relying on vocational expert testimony that improperly conflicted with the DOT.

     The court concludes that the ALJ correctly found that foot elevation was only a short-term treatment recommendation, not a long-term limit on Miner's physical capabilities. The court concludes that the ALJ properly considered the VE's testimony, because the VE explained why he categorized a specific job at a lower skill level than the DOT. The court will affirm the ALJ's decision.

---

[1] The court has amended the caption to reflect Frank J. Bisignano's appointment as Commissioner. *See* Fed. R. Civ. P. 25(d).

BACKGROUND

Miner applied for disability benefits, alleging disability beginning December 31, 2018. R. 66.² Her claim was denied at the initial level and on reconsideration. *Id*. Miner requested a hearing before an administrative law judge (ALJ). *Id.* In a thorough written opinion, the ALJ found that Miner suffered from the following severe physical and mental impairments: degenerative disc disease of lumbar spine; degenerative joint disease of right foot; depression; and anxiety. R. 69. Only the right foot impairment is at issue in this appeal. Miner's foot problems stem from a serious accident in 2008 when her foot was run over by a heavy truck, causing fractures that required surgical repair.

The ALJ ascribed to Miner the RFC to perform sedentary work with additional restrictions to accommodate her physical and mental limitations. R. 72. Relying on the testimony of a vocational expert (VE), the ALJ found that Miner could not perform any of her past relevant work, but that she was not disabled because she could perform jobs that exist in significant numbers in the national economy, most notably as a telephone solicitor, with 53,400 such jobs in the national economy. R. 83–84.

Miner now appeals to this court. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). But the ALJ's decision must

---

² Record cites are to the administrative transcript located at Dkt. 3. Citations to other filings use the page numbers assigned by CM/ECF, not the page numbers in the original document.

identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

ANALYSIS

**A. Right foot elevation**

Miner contends that the ALJ failed to adequately accommodate her right foot problems by failing to include in the RFC that she be allowed to elevate her right foot while working. Such a requirement would preclude Miner's employment. There is evidence in the record that Miner was, at times, instructed by her health care providers to elevate her right foot as much as possible. The issue is whether Miner's need to elevate her foot was a short-term post-treatment requirement, as the ALJ found, or whether it was a long-term need that should have been accounted for in the RFC.

Miner contends that her "doctors repeatedly and for more than a year recommended that she elevate her leg as frequently as she can." Dkt. 7, at 16. She cites four occasions. The first is from April 19, 2022, when Miner visited the emergency room for foot pain. R. 825. The physician assistant who evaluated her said that the foot pain was likely from her old injury. The physician assistant said she could undertake activity as tolerated, and she recommended that Miner take ibuprofen and Tylenol as needed, apply ice, and elevate her foot frequently. Miner had follow-up care for her foot through 2022, but apparently no health care provider recommended foot elevation again until 2023.

The next three occasions are closely related. On January 30, 2023, Miner underwent extensive surgery on her right foot, which included joint fusion surgery and the amputation of her small toe. R. 1012. Among the discharge instructions were for "Elevation and Ice to RLE

3

[right leg]." *Id*. The discharge instructions also recommended that Miner maintain the dressing/splint until a follow-up appointment in two weeks. On April 20, 2023, Miner was seen in the wound care clinic for follow-up on the surgical wound, which had partially opened. R. 1088–89. The wound was cleaned. Among the treatment plans were that Miner should "[e]levate foot above knee above hip as frequently as possible." R. 1089. On May 17, 2023, Miner had a follow-up visit to the wound care clinic. R. 44. Again among the treatment plans was that Miner should elevate her foot as frequently as possible.

Miner argues that there was no termination date for the recommended foot elevation, and thus the ALJ was "playing doctor" by reading one into the record. Dkt. 7, at 17. It would be stretch to say that doctors had told Miner repeatedly over a year to elevate her foot, because there was a significant gap between the first recommendation in April 2022 and the three post-surgery recommendations in early 2023. The only fair reading of the treatment notes for three post-surgery treatments is that foot elevation, like the other elements of the post-surgery plan, was recommended only until she healed from the surgery. The recommendation in April 2022 was for an acute episode of Miner's chronic foot pain. But Miner points to no further recommendations for foot elevation until the January 2023 surgery.

As the Commissioner points out, neither of the two state-agency medical consultants found that Miner had a long-term need to elevate her right foot. *See* R. 131–32; R. 143–44 (Dr. Mina Khorshidi, at initial level); R. 155–56; R. 167–68 (Dr. Marc Young, on reconsideration). The ALJ found these assessments to be partially persuasive; the ALJ added additional limitations to the RFC to account for the full effect of Miner's physical impairments. R. 81.

The ALJ acknowledged that Miner had been advised to elevate her right foot. R. 76. But the ALJ concluded that the recommendations for foot-elevation did not establish a long-term need. The ALJ's conclusion is supported by the context of the four recommendations for foot elevation, and the lack of any recommendation for a foot-elevation requirement by either of the state-agency medical consultants. The court concludes that the ALJ's decision to not include a foot-elevation requirement is supported by substantial evidence.

## B. VE testimony

Miner contends that the ALJ committed legal error by accepting the VE's testimony even though that testimony conflicted with the Dictionary of Occupational Titles (DOT). According to Miner, the ALJ violated Social Security policy SSR 00-4p, which prohibits ALJs from relying on VE testimony that is inconsistent with Social Security Administration policy.

The provision of SSR 00-4p that Miner relies on provides in part:

> Although there may be a reason for classifying an occupation's skill level differently than in the DOT, the regulatory definitions of skill levels are controlling. For example, VE or VS evidence may not be relied upon to establish that unskilled work involves complex duties that take many months to learn, because that is inconsistent with the regulatory definition of unskilled work. See 20 CFR 404.1568 and 416.968.

SSR 00-4P (S.S.A. Dec. 4, 2000) 2000 WL 1898704. In other words, the VE may testify that a given job, as actually performed, is "unskilled," even though the DOT lists that job as "semi-skilled." But an ALJ may not accept VE testimony that a job that takes more than 30 days to learn is "unskilled," because that would contradict the Social Security Administration definition of "unskilled."

In Miner's case, the VE testified that the job of telephone solicitor, as actually performed, is at SVP (specific vocational preparation) 2, whereas the DOT lists it as SVP 3.

5

R. 122. The VE explained his decision to categorize it as SVP 2: it was a straight-forward job with median training time of 16 days on the high end. R. 123. Given Miner's mental limitations in the RFC, she was capable only of unskilled work. At SVP 2, telephone solicitor would be a job within her RFC.

The VE's testimony conflicted with the DOT on the classification of the skill level required for the job of telephone solicitor. That's expressly allowed under SSR 00-4p. He did not contradict the Social Security Administration's definition of unskilled work, thus the ALJ did not violate SSR 00-4p by accepting the VE's testimony.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment and close the case.

Entered February 13, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge